UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RYLEE CARL EKLUND,** | § | |
| **TDCJ No. 02117263,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-20-CA-0373-XR** |
| | § | |
| **BOBBY LUMPKIN,[1] Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Rylee Carl Eklund's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 2), Petitioner's Amended Memorandum in Support (ECF No. 5), and Respondent Bobby Lumpkin's Answer thereto (ECF No. 10). Petitioner challenges the constitutionality of his January 2017 state court convictions for murder and aggravated assault with a deadly weapon. *State v. Eklund*, No. CR2014-558 (207th Dist. Ct., Comal Cnty., Tex. Jan. 27, 2017). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

The facts of Petitioner's case were accurately summarized by the Texas Thirteenth Court of Appeals on direct appeal:

---

[1] The previous named Respondent in this action was Lorie Davis. On August 10, 2020, Bobby Lumpkin succeeded Davis as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Lumpkin is automatically substituted as a party.

[Petitioner] was indicted on one count of murder and two counts of aggravated assault.  *See* TEX. PENAL CODE ANN. §§ 19.02(b), 22.02(a)(2) (West, Westlaw through 2017 1st C.S.).  The indictments related to the events of July 12, 2014, when [Petitioner] fired a shotgun at three former classmates, killing one and wounding the others.  Viewed in the appropriate light, the evidence at trial establishes the following.

## A.    The State's Case

[Petitioner], who was then nineteen, was friends with Drake Lund and Sawyer Darwin.  In the days preceding the shooting, [Petitioner]'s parents were out of town, and Darwin and Lund visited [Petitioner] at his parents' home.  Darwin spent the night there, and the next morning, Lund went to [Petitioner]'s house to show off his new car.

On July 11, [Petitioner] texted Darwin about getting psychedelic mushrooms, marijuana, and ecstasy.  [Petitioner] drove to San Antonio to meet a drug dealer that night.

On July 12, [Petitioner] invited Darwin to his house to smoke marijuana.  Darwin told [Petitioner] that he did not feel like smoking but offered to drink with him, and [Petitioner] agreed.  [Petitioner] also invited Lund to his house.  Darwin invited along his friend Robert Bree.  Bree understood that they would be drinking and possibly taking psychedelic mushrooms.  Driving his new car, Lund picked up Darwin and Bree and drove to [Petitioner]'s house.

The boys arrived around 5:00 p.m., while it was daylight.  They found the main gate locked, which Darwin thought was odd.  They entered through a side gate, where they saw [Petitioner]'s truck in the driveway.  The three knocked on the door of the side house where [Petitioner] usually stayed, but there was no answer.  They peered in a window, but they could not see [Petitioner].

The boys then knocked on the doors of the main residence.  Again there was no answer.  They observed that all the lights were off, which they found unusual.  Beginning to worry for [Petitioner]'s well-being, the boys continued to knock on doors and began knocking on windows.  They also yelled for [Petitioner], as Darwin described it, "Rylee, can you hear us?  This is Sawyer [Darwin] and Drake [Lund].  Are you there? Are you okay?"  They tried calling [Petitioner] twice, to no avail.  Several minutes passed.

Eventually, they moved around to the front porch and knocked on the door one more time.  Darwin stood on the front porch, while Lund and Bree stood on the lawn.

While they discussed what to do, [Petitioner] fired a 12-gauge shotgun through the closed window blinds at them.  The first shot struck Lund and

2

Darwin; Darwin collapsed to the ground.  [Petitioner] fired two more shots, striking Darwin in the chest and Bree in the stomach.  Bree began to scream and run.  Lund soon died as a result of his wounds.

When the shooting stopped, Bree contacted police and applied pressure to Darwin's wounds.  After a few minutes, [Petitioner] emerged from the house crying and went to Darwin, saying, "Oh, my gosh, Sawyer, what did I do?  I'm sorry."  Police arrived, and Darwin was airlifted to a hospital, where life-saving surgery was performed.

Darwin suffered extensive injuries and partial disability to his left arm.  Multiple shotgun pellets remain lodged in his body, including his heart.  Pellets also remain in Bree's stomach.

**B.     [Petitioner]'s Testimony and 911 Call**

[Petitioner] testified that he was sleeping on the couch in the living room when he was awakened by the sound of a "gate jingling."  He explained that he looked out the blinds and saw a car he did not recognize driving up to the side gate of his house.  According to [Petitioner], the vehicle was partially obscured by trees, and he could only see someone in the back seat whom he did not recognize.  He testified that he began locking the doors and closing the blinds in fear.  [Petitioner] stated that he saw an unknown stranger pass by a window, and he retreated to his parents' master bedroom where the firearms were kept, fearing that the strangers were burglars.  He locked the bedroom door, shut himself in the closet, and called 911.

In the 911 recording, [Petitioner] spoke in a whisper to the operator, describing his fear that "one or two" strangers were outside his house.  The operator dispatched an officer but explained that the officer was not nearby.  [Petitioner] described hearing the strangers knocking on the door and, later, talking.  Roughly ten minutes into the call, [Petitioner]'s line went silent.

[Petitioner] testified that he grabbed a shotgun and left the closet.  He stated that he heard what sounded like a window being opened, broken, or "something being jostled with."  He explained that he saw three figures out the window, but could not see their faces.  He decided to fire:

> A.     I fired—the direction I tried to fire was away from them, but with immediate getaway, with the immediate sense of, "You're not supposed to be here. Get away."

> Q.     But you fired at the three figures, correct?

> A.     Yes.

Q.      Okay. Why did you do that?

A.      I felt they were trying to break in.

Q.      Describe the—the manner in which you shot them.

A.      I shot—I shot three shots in succession: One shot, two shot, three shots.

Q.      Okay. Through the window that the figures were in front of?

A.      Yes.

Q.      Through the window the noise was coming from?

A.      Yes.

Q.      What did you hear or see after you pulled the trigger?

A.      After I pulled the trigger, I heard screaming and yelling, and I looked through the blinds.

Q.      Okay. What did you hear and see at that point?

A.      I saw my friends. I saw my friends were shot outside in front—in the yard.

[Petitioner] testified that if he knew that it was his friends in the front yard, he would not have fired, and that his intention was to fire three warning shots.

## C.      Jury Verdict

At the close of the evidence, the jury found [Petitioner] guilty as charged on the murder and aggravated assault counts. The jury assessed punishment at fifteen years' confinement on the murder count, and at ten and five years on the aggravated assault counts, respectively. The sentences were ordered to run concurrently.

*Eklund v. State*, No. 13-17-00225-CR, 2018 WL 5074700 (Tex. App.—Corpus Christi-Edinburg, Oct. 18, 2018, pet. ref'd); (ECF No. 11-2 at 2-6).

The Texas Thirteenth Court of Appeals affirmed Petitioner's convictions in an unpublished opinion on direct appeal. *Id*. The Texas Court of Criminal Appeals (TCCA) then refused his petition for discretionary review. *Eklund v. State*, No. 1312-18 (Tex. Crim. App. Mar. 6, 2019); (ECF No. 11-14). On October 28, 2019, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction, but the TCCA eventually denied the application without written order on February 19, 2020, based on the findings of the trial court and on the court's own independent review of the record. *Ex parte Eklund*, No. 90,761-01 (Tex. Crim. App.); (ECF Nos. 11-31, 11-32 at 6).

Petitioner initiated the instant proceedings by filing a petition for federal habeas relief on March 24, 2020. (ECF No. 1). Petitioner later amended his petition (ECF No. 2) and filed a supplemental memorandum in support (ECF No. 5). In the amended petition and memorandum, Petitioner raises the same allegations that were rejected by the TCCA during his state habeas proceedings: (1) he was denied due process because there was no evidence he intended to injure or kill any of the victims, (2) he was denied due process because the jury instructions on self-defense were too narrow, (3) his trial counsel was ineffective for failing to request other appropriate jury instructions, and (4) his trial counsel was ineffective for introducing evidence of drug possession and allowing an instruction on voluntary intoxication. Petitioner also appears to raise an allegation that was not litigated in state court: (5) his trial counsel was ineffective for failing to introduce evidence of a second 911 call.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court

proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

**A.** **Sufficiency of the Evidence (Claim 1).**

Petitioner first contends the State failed to present legally sufficient evidence to support his convictions because there was no evidence that Petitioner intended to injure or kill any of the victims. Specifically, Petitioner contends the State was required to prove beyond a reasonable doubt that he specifically intended to cause death or injury to Drake Lund, Robert Bree and Sawyer Darwin, but presented no evidence in this regard. Petitioner's allegation was rejected by the state appellate court on direct appeal and again by the TCCA when it refused Petitioner's petition for discretionary review. As discussed below, Petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

1. The *Jackson* Standard of Review

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The Court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. In applying this standard, the Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, all credibility choices and conflicts in

inferences are to be resolved in favor of the verdict. *United States v. Resio-Trejo,* 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994).

In addition, AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court has explained:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

2.   <u>Application of the *Jackson* Standard</u>

Petitioner raised his insufficient evidence claim during his direct appeal proceedings, but the TCCA refused Petitioner's petition for discretionary review without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018). In other words, the Court must look to the last reasoned state judgment that considered and rejected Petitioner's insufficient evidence claim when reviewing the claim under the doubly deferential standard set forth in *Jackson*. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals, which concluded that there was sufficient evidence of intent to support Petitioner's convictions for murder and aggravated assault with a deadly weapon:

8

By his first through fifth issues, [Petitioner] challenges the sufficiency of the evidence on intent. He draws attention to the fact that the State did not submit jury instructions on the law of transferred intent. He contends that without a transferred intent instruction, the State was required to prove that [Petitioner] directed his assaultive acts not at unknown strangers, but specifically at Lund, Darwin, and Bree. He argues that because the evidence unequivocally establishes that [Petitioner] did not know that the perceived burglars were his friends, the evidence was insufficient to prove intent, which is an element of both aggravated assault and murder.

## A.     Transferred Intent

Under the theory of transferred intent, a person can be held criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected. Tex. Penal Code Ann. § 6.04(b)(2) (West, Westlaw through 2017 1st C.S.). Transferred intent is raised when there is evidence that a defendant, with the required culpable mental state, intends to injure or harm a specific person but injures or harms a different person. *Trevino v. State*, 228 S.W.3d 729, 737 (Tex. App.—Corpus Christi 2006, pet. ref'd) (op. on reh'g). The "classic example" of transferred intent is the act of firing at an intended victim while that person is in a group of other persons; if the intended person is killed, the offense is murder, but if a different person in the group is killed, the offense is murder pursuant to the transferred intent rule. *Roberts v. State*, 273 S.W.3d 322, 330 (Tex. Crim. App. 2008). "Thus where A aims at B with a murderous intent to kill, but because of a bad aim he hits and kills C, A is uniformly held guilty of the murder of C." *Martinez v. State*, 844 S.W.2d 279, 282 (Tex. App.—San Antonio 1992, pet. ref'd).

However, the "bad-aim" scenario "is to be distinguished from an entirely different unintended-victim case—the mistaken-identity situation—which is governed by a quite separate set of legal rules." *Id*. "Thus in the semi-darkness A shoots, with intent to kill, at a vague form he supposes to be his enemy B but who is actually another person C; his well-aimed bullet kills C." *Id*. "Here too A is guilty of murdering C, to the same extent he would have been guilty of murdering B had he made no mistake." *Id*. "A intended to kill the person at whom he aimed, so there is even less difficulty in holding him guilty than in the bad-aim situation." *Id*.

The present case does not involve the law of transferred intent. *See id*. It was not the State's theory that [Petitioner] was aiming at someone other than the victims and simply missed his intended target. *See id*. The State instead introduced evidence that [Petitioner] fired at three individuals on his porch; the fact that these persons were his well-meaning friends rather than shadowy strangers is immaterial. *See id*. Therefore, the law of transferred intent does not apply. *See id*.

### B.       Sufficiency of the Evidence

[Petitioner] testified that he did not intend to fire at the perceived strangers, but instead intended to fire warning shots in an effort to scare them off. He argues that in light of this testimony, the evidence is insufficient to show that he intended to assault or kill his friends.  When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.  *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).  We must presume that the jury resolved any conflicting inferences in favor of the verdict.  *Id*.

The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result.  *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Medina v. State*, 7 S.W.3d 633, 637 (Tex. Crim. App. 1999) (en banc).  "If a deadly weapon is used in [a] deadly manner, the inference is almost conclusive that he intended to kill."  *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (en banc).  "Naturally, the most obvious cases, and the easiest ones in which to prove a specific intent to kill, are those cases in which a firearm was used and was fired or attempted to have been fired at a person."  *Id*.

Here, [Petitioner] fired three shots through the window directly at the individuals who stood on his front porch, striking all three.  A rational jury could have inferred the necessary intent from this evidence beyond a reasonable doubt, *see id*., and it could have disbelieved [Petitioner]'s testimony to the contrary.  *See Queeman*, 520 S.W.3d at 622.  We find the evidence sufficient to show the element of intent.  *See id*.

*Eklund v. State*, 2018 WL 5074700, at *3-4; (ECF No. 11-2 at 6-8).

Petitioner contends the state court's analysis is objectively unreasonable because it disregards the identity of the victims, which is an essential element in assaultive offenses under Texas law.  (ECF No. 5 at 12).  Because the identity of a victim is a necessary element the State must establish, Petitioner argues the State must also establish that he knew the identities of the victims to establish the necessary intent.  As pointed out by Respondent, however, Petitioner conflates the issue of the victims' identities—which the State established in this case—with whether Petitioner knew the identities of the victims when he shot them.  While Petitioner is correct that the State is required to prove the identity of a victim, he provides no legal support for

10

the proposition that the State must prove that an assailant knew the victim's identity at the time of the offense in order to establish the requisite intent. *See Manrique v. State*, 994 S.W.2d 640, 650 (Tex. Crim. App. 1999) (Meyers, J., concurring) ("The identity of the victim is not an element of the crime to which the culpable mental state attaches."). As such, Petitioner fails to show that the state court's determination was an unreasonable application of the *Jackson* standard.

Furthermore, the state court's determination that the evidence was sufficient to establish the element of intent was not unreasonable given the evidence in the record. Again, a state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). As with the state appellate court, this Court has independently reviewed the record and finds the evidence sufficient to support the element of intent. Thus, viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under *Jackson*. Federal habeas relief is therefore denied.

**B.**    **Trial Court Error** **(Claim 2).**

Petitioner's second allegation contends that the trial court provided an inadequate instruction to the jury on the issue of self-defense. According to Petitioner, the self-defense instruction given to the jury was a "straw man" that guaranteed a guilty verdict. This allegation was rejected by the TCCA during Petitioner's state habeas proceedings. Petitioner fails to demonstrate the state court's rejection of the claim was either contrary to, or an unreasonable application of, Supreme Court precedent.

Claims of improper jury instruction or rejection of a requested jury instruction in state criminal trials do not generally form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002); (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous)). Rather, such claims only support a claim for habeas relief if the erroneous instruction by itself rendered the trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977); *Galvan*, 293 F.3d at 764 (relevant inquiry on claims of improper or rejected jury instructions is whether there was prejudice of constitutional magnitude). The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Galvan*, 293 F.3d at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Petitioner fails to make this showing. The jury received the following instruction regarding self-defense in this case:

> (C) Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as set out above, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, or to prevent the other person's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.
>
> The term "reasonable belief" as used herein means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.
>
> The term "deadly force" as used herein means force that is intended or known by the actor using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

(ECF No. 11-19 at 33).  Contrary to Petitioner's assertion, the jury was able to consider what he believes to be the "central issues" in this case—i.e., Petitioner's "mistaken belief he was under attack by unknown assailants and was exercising his right to self-defense."  (ECF No. 5 at 41).  In fact, this self-defense instruction is, in relevant part, identical to the Texas statutes governing self-defense and the use of deadly force.  *See* Tex. Penal Code §§ 9.31(a) and 9.32(a).  While the instructions did not entirely reiterate all of the language contained in the statutes, Petitioner has provided no authority establishing that the trial court was required to do so.

Because the jury was properly instructed on the issue of self-defense in this case, Petitioner fails to demonstrate that the trial court's instructions were erroneous, much less show that instructions so "infected" the entire trial as to result in a denial of due process.  Thus, Petitioner is not entitled to federal habeas relief on this claim.

## C.    <u>Trial Counsel</u> (Claims 3-5).

Petitioner's next three allegations assert that he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments.  Specifically, Petitioner contends trial counsel rendered ineffective assistance by: (1) failing to request several appropriate jury instructions, (2) introducing evidence of drug possession and allowing an instruction on voluntary intoxication, and (3) failing to introduce evidence of a second 911 call.

As discussed below, Petitioner's first two allegations were raised and rejected during Petitioner's state habeas proceedings, and Petitioner fails to demonstrate the state habeas court's rejection of the allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.  Petitioner's third allegation is unexhausted and procedurally barred from federal habeas review.

1.    The *Strickland* Standard

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687-89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards

of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016)

(citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111,

112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance

fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland*

standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in

this case is not whether counsel's actions were reasonable, but whether "there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

    2.    <u>Jury Instructions</u>

    Petitioner's first IATC claim alleges that his trial counsel, Kenneth Baker, was ineffective

for failing to request several jury instructions to be included in the jury charge.  Petitioner

contends counsel should have requested instructions on the law regarding: (1) apparent danger,

(2) Petitioner's point of view, (3) the permissible use of deadly force in self-defense, (4) the

defense of others, (5) the defense of property, (6) Texas's "castle doctrine," and (7) mistake of

fact.

    Petitioner raised these allegations during his state habeas proceedings.  In response, trial

counsel submitted an affidavit wherein he explained his reasons for not requesting these

instructions:

> 1.    Ground Three no 1.  Mistake of Fact: I did not request a mistake of fact instruction for two reasons.  The first is that should the court give that instruction the jury's focus would be on the very unfavorable facts pointing to guilt such as that the victims pulled up in a car familiar to [Petitioner], that the victims came to the property at [Petitioner]'s request, that it was broad daylight, that [Petitioner] had opportunity to view them as they walked around the property, that they were calling his name out and that they were calling him on the phone right before the shooting.  If a mistake of fact instruction was given I believed the jury's focus would be on the reasonableness of the mistake instead of on his fear for his life.  Also, and appellate counsel probably was unaware due to his not being at the trial and due to his not communicating with trial counsel prior to the First Appeal but the State took a video of an officer walking outside calling [Petitioner]'s name

15

and there was little doubt after that demonstration that someone in [Petitioner]'s position could hear the victims calling his name.

A mistake of fact instruction in these circumstances would have focused the jury on facts not favorable to the defense.  The second reason is that it did not appear to me to have meet the legal standard for a mistake of fact instruction.

2.     Ground Three No 2.  Failing to ask for instructions on defense of parent's property, apparent danger and viewing the evidence from [Petitioner]'s standpoint alone.  I believed that the [s]elf defense instruction was the most compelling for the jury.  I knew the jury would be struggling with the reasonableness of [Petitioner]'s actions, e.g . . . broad daylight, friends yelling his name and calling him, [Petitioner] inviting them over before the shooting, no evidence of an actual break in and tremendous loss to the victims.  Instead I wanted the jury to focus on [Petitioner]'s fear for his [life] that he testified to and facts such as his age, his being alone, his call to 911 etc . . . as I believed the jurors were more likely to find justification based on self-defense instead of defense of other's property[.]  I believed that keeping their focus there made for a stronger case.  The giving of every possible instruction and alternative paths to a not guilty "the shotgun approach" is in my experience less effective then tailoring the instructions to your best defense.  I did not consider asking for apparent danger and or viewing the evidence from the defendant's standpoint alone because the self-defense instruction did in my opinion encompass those principles and, again since the self-defense instruction most closely tracked and fit with the evidence and our theory of the case.  I did not see that adding as many instructions as I could think of was the best approach and might dilute the power of the instruction given.

3.     Ground Three No. 3.  The castle doctrine did not apply in this case due to [Petitioner] being in violation of a law other than a traffic offence.  Therefore I did [not] consider it error for the court not to instruct the jury on it.

(ECF Nos. 11-32 at 173-74, 11-33 at 1).  The state habeas trial court found trial counsel's affidavit competent and credible and that Petitioner "has not shown that Trial Counsel's strategies were unreasonable" or shown "deficient performance or prejudice."  (ECF No. 11-33 at 10).  These findings and conclusions were then adopted by the TCCA when it denied Petitioner's state habeas application.  (ECF No. 11-31).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland*.  Trial counsel generally have broad discretion when it comes to deciding how best to proceed strategically, and such choices, made after a thorough

investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (noting the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client."). Moreover, counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

Here, trial counsel's affidavit—adopted by the state habeas court and ultimately by the TCCA—explained that he did not seek the aforementioned jury instructions because they were either inapplicable to this case or would have forced the jury to focus on facts that were not favorable to the defense. Counsel did not believe that giving every possible instruction to the jury was effective, and chose instead to tailor the jury instructions to the best defense available, which in this case was self-defense. Petitioner has not shown that counsel's assessment was incorrect, much less demonstrated that state court's ruling on trial counsel's strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing the allegations under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claims cannot survive. *Id*. at 105.

   3.   Evidence of Drug Possession

Petitioner next asserts his trial counsel rendered ineffective assistance by introducing extraneous evidence of drug possession. According to Petitioner, trial counsel inexplicably introduced evidence concerning psychedelic mushrooms which then allowed the prosecution to

imply that he was intoxicated when he committed the offenses.  Counsel's actions also allowed the prosecution to request and receive a jury instruction on voluntary intoxication which Petitioner argues was an impermissible comment on the evidence.[2]

Petitioner unsuccessfully raised this IATC allegation during his state habeas proceedings. Petitioner also raised a related allegation on direct appeal asserting that the voluntary intoxication instruction constituted an impermissible comment on the weight of the evidence.  In finding that the instruction was proper, the state appellate court noted the abundance of evidence presented by the State which raised the issue of Petitioner's potential intoxication:

> There was evidence from multiple sources that raised the issue of [Petitioner]'s intoxication.  [Petitioner]'s parents were out of town the weekend of the shooting, and Darwin testified that he slept over and drank margaritas with [Petitioner] days before.  Text messages revealed that on the day before the shooting, [Petitioner] talked with Darwin about obtaining psychedelic mushrooms, marijuana, and ecstasy from a dealer, and [Petitioner] admitted that he met with the dealer in San Antonio later that day.

> On the day of the shooting, [Petitioner] invited Darwin over to smoke marijuana, and Darwin agreed to come drink alcohol with him.  Bree testified that he tagged along with Lund and Darwin with the understanding that they would possibly be ingesting psychedelic mushrooms at [Petitioner]'s place.  Bree brought along an anti-anxiety medication in case anyone experienced issues while using mushrooms.

> [Petitioner] testified that when the victims arrived on the afternoon of July 12, he was sleeping on the couch.  He looked out the window and grew afraid because he did not recognize Lund's car, despite the fact that Lund had shown the car to [Petitioner] just days before.  [Petitioner] did not recognize two of his closest friends, and he instead grew so fearful of them that he closed all the blinds, locked the doors, hid in a closet, and called 911.  He then shot three times out of the window blinds at the unknown individuals who were knocking on his

---

[2]   The voluntary intoxication instruction contained in the jury charge read as follows:

> Voluntary intoxication does not constitute a defense to the commission of a crime.  For the purpose of this charge "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

(ECF No. 11-19 at 31).

front door.  Following the shooting, a marijuana pipe, lighter, and baggie of marijuana were recovered from [Petitioner]'s person, and bottles of liquor were found in the main house.  A marijuana grinder was recovered from [Petitioner]'s side house.

*Eklund v. State*, 2018 WL 5074700, at *6; (ECF No. 11-2 at 12-13).

Given the amount of evidence available to the State raising the question of whether Petitioner was intoxicated, Petitioner's implication that his trial counsel was somehow responsible for its introduction is somewhat puzzling.  It was the State—not counsel—who introduced this evidence to the jury, and nothing in the record supports Petitioner's argument that it was counsel who first "alerted" the prosecution to the theory that Petitioner may have intoxicated himself on mushrooms.  (ECF No. 5 at 38).  Petitioner even acknowledges that counsel only mentioned psychedelic mushrooms during a hearing outside the presence of the jury, and that it was the State, not counsel, that first introduced evidence concerning mushrooms in front of the jury.  *Id*. at 35.  While Petitioner contends that counsel "did nothing to exclude this patently irrelevant evidence," he fails to demonstrate that the evidence was either irrelevant or inadmissible for some other reason.  *Id*. at 38.

Furthermore, counsel's affidavit—adopted by the state habeas court and ultimately by the TCCA—explained that, to the extent he did discuss mushrooms in front of the jury, he did so "to control the narrative and mitigate the impact as the references to mushrooms was laced [throughout] the text messages between [Petitioner] and the victims."  (ECF No. 11-33 at 1).  Again, such strategic decisions by trial counsel are virtually unchallengeable.  *Strickland*, 466 U.S. at 673; *Ward*, 777 F.3d at 264.  Other than speculating that counsel contributed to the introduction of this evidence, however, Petitioner has not shown that counsel's strategy was unreasonable, much less demonstrated that state court's ruling on trial counsel's strategy "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Finally, to the extent Petitioner faults counsel for allowing the State to obtain a jury instruction on voluntary intoxication, the record indicates that counsel did object during the charging conference prior to closing argument.  (ECF No. 11-25 at 66-68).  Counsel argued that there had been no evidence introduced concerning Petitioner's intoxication, but rather only evidence concerning possession, and that such an instruction is unnecessary because the defense has not raised intoxication as a defense.  The trial court overruled counsel's motion.  *Id*. at 68.  As such, Petitioner's trial counsel cannot reasonably be faulted for failing to object to the instruction.  To the extent Petitioner contends counsel should have objected further, counsel cannot be considered deficient or prejudicial for failing to raise a futile or non-meritorious argument.  *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).  Petitioner therefore fails to show that the state court's ruling was contrary to, or involved an unreasonable application of *Strickland*.

4.    Evidence of the Second Call to 911

In his final allegation, Petitioner claims he received ineffective assistance by trial counsel's failure to introduce evidence of a second 911 call that would have bolstered his mistake of fact defense.  While admitting that counsel unsuccessfully attempted to introduce the recording under the rule of optional completeness, Petitioner appears to contend, without further explanation, that trial counsel should have done more to introduce the recording.  Petitioner did not raise this allegation on direct appeal or during his state habeas proceedings.  Because it is

being presented for the first time in this federal habeas proceeding, Petitioner's allegation is unexhausted and procedurally barred from federal habeas review.

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits. *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, the highest state court for criminal matters is the TCCA, and a prisoner must present the substance of his claims to the TCCA in either a petition for discretionary review or an application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.07. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

As the record demonstrates, Petitioner failed to exhaust his state court remedies with regard to the instant allegation. In addition to being unexhausted, however, Petitioner's claim is also procedurally defaulted. "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citation and internal quotation marks omitted).

Here, should the Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the TCCA would find the claim procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure. Because

Texas would likely bar another habeas corpus application by Petitioner, he has committed a procedural default that is sufficient to bar federal habeas corpus review.  *See, e.g., Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999) (same).

Consequently, Petitioner is precluded from federal habeas review of the instant claim unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider the claim will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). Petitioner has not replied to Respondent's assertion of the procedural bar and did not attempt to establish either cause or a fundamental miscarriage of justice in his amended petition or supplemental memorandum.  Thus, circuit precedent compels the denial of the claim as procedurally defaulted.

### IV.  <u>Motion for Evidentiary Hearing</u>

Lastly, Petitioner requests an evidentiary hearing to challenge the state court's resolution of his claims for relief.  (ECF No. 5 at 32).  His request is denied, as habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").  Under the AEDPA, the proper place for development of the facts supporting a claim is the state court.  *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places

the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court).  Thus, as in this case, when a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during petitioner's state habeas corpus proceeding, further factual development in federal court is effectively precluded.  *Pinholster*, 563 U.S. at 181-88 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by §2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Likewise, where a federal habeas corpus petitioner's claims lack merit on their face, further factual development is not necessitated.  *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development, especially when confronted with claims foreclosed by applicable legal authority). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro v. Landrigan,* 550 U.S.465, 468 (2007)).  "In determining whether to grant a hearing, under Rule 8(a) of the Habeas Court Rules 'the judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted.'" *Richards*, 566 F.3d at 562-63 (*quoting Hall v. Quarterman,* 534 F.3d 365, 368 (5th Cir. 2008)).  In making this determination, courts must consider whether an evidentiary hearing could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle

the applicant to federal habeas relief." *Richards*, 566 F.3d at 563 (*quoting Schriro*, 550 U.S. at 474).

As discussed throughout this opinion, Petitioner's remaining allegations lack merit on their face.  Further factual development is therefore unnecessary.  *Register*, 681 F.3d at 627-30.

## V.  <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings;  *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

## VI.  <u>Conclusion and Order</u>

After careful consideration, the Court concludes Petitioner has failed to establish that the state court's rejection of Petitioner's first four allegations on the merits during either his direct appeal or state habeas proceedings was (1) contrary to, or involved an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.  The Court also concludes that Petitioner's fifth allegation is unexhausted and procedurally barred from federal habeas corpus review.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.     Federal habeas corpus relief is **DENIED** and Petitioner Rylee Carl Eklund's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 2) is **DISMISSED WITH PREJUDICE**;

2.     Petitioner's request for an evidentiary hearing (ECF No. 5 at 32) is **DENIED**;

3.     No Certificate of Appealability shall issue in this case; and

4.     All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the 1st day of June, 2021.

_____
    **XAVIER RODRIGUEZ**
    **United States District Judge**